UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** CR 17-237 PJS/DTS |
| | ) | |
| Plaintiff, | ) | (18 U.S.C. § 1341) |
| | ) | (18 U.S.C. § 1343) |
| v. | ) | (18 U.S.C. § 1349) |
| | ) | (18 U.S.C. § 1519) |
| | ) | (18 U.S.C. § 2) |
| LUMINAIRE ENVIRONMENTAL | ) | |
| AND TECHNOLOGIES, INC., | ) | |
| JOHN D. MILLER, JR., and | ) | |
| JOSEPH V. MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES:

## OVERVIEW

1.      Beginning in or about 2010 and continuing until in or about 2015, defendant JOHN D. MILLER, JR., JOSEPH V. MILLER, and others known and unknown to the Grand Jury, all acting within the scope of their agency and employment, and for the benefit of LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC., falsely and fraudulently represented to customers that LUMINAIRE would pick up shipments of toxic chemicals—namely fluorescent light ballasts containing polychlorinated biphenyls ("PCBs")—and transport the toxic chemicals to the LUMINAIRE facility in Plymouth, Minnesota, where the defendants told customers the PCBs would be removed from the ballasts and incinerated, or otherwise properly disposed of in accordance with applicable laws.   Instead, on numerous occasions between 2010 and 2015, after picking up a

SCANNED
SEP 1 9 2017
U.S. DISTRICT COURT MPLS

shipment of PCB-ballasts from a customer, LUMINAIRE's employees removed or otherwise obscured labels from the containers holding the PCB-ballasts, and sold the PCB-ballasts as scrap metal to nearby metal recycling facilities, all at the direction of the defendants.  By doing so, the defendants were able to charge customers a significant fee for work they never performed—transporting and properly disposing of toxic chemicals—and obtain additional profits by fraudulently selling the PCB-ballasts to scrap yards.  In total, the defendants obtained over $1,000,000 through their fraudulent scheme.

## INTRODUCTION

At times material to this Indictment:

2.      Defendant LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC. (hereafter "LUMINAIRE"), was a corporation organized under the laws of the State of Minnesota, with a principal place of business located at 14930 28th Avenue North, in Plymouth, Minnesota.

3.      Defendant JOHN D. MILLER, JR. (hereafter "JOHN MILLER") was a resident of Minnesota who along with his wife owned and operated LUMINAIRE.

4.      Through LUMINAIRE, JOHN MILLER purported to operate a recycling and waste disposal business.  Among other services, LUMINAIRE offered to pick up fluorescent light ballasts containing PCBs from LUMINAIRE's customers, transport the PCB-containing ballasts to the LUMINAIRE facility in Plymouth, Minnesota, and remove and dispose of all the PCBs in accordance with applicable environmental laws and

regulations.  LUMINAIRE charged customers a significant fee to transport and recycle the ballasts because the PCBs contained in the ballasts were considered a toxic chemical, and the law mandates special procedures for disposal of these materials.

5.      Defendant JOSEPH V. MILLER (hereafter "JOE MILLER") was a resident of Minnesota who beginning in about 2014 worked as the Operations Manager for LUMINAIRE.  In that capacity, JOE MILLER was responsible for, among other things, generating and maintaining documentation relating to the transportation and disposal of PCB-ballasts received by LUMINAIRE from its customers, and providing copies of the documentation to customers and state environmental protection agencies.  JOE MILLER was the brother of defendant JOHN MILLER.

6.      In or about February 2010, LUMINAIRE obtained a license to operate its recycling and waste disposal facility from the Department of Environmental Services of Hennepin County, Minnesota.  As part of its application for this license, LUMINAIRE submitted an Operations and Emergency Contingency Plan ("OEC Plan"), in which the company described the procedures it would follow when handling PCB-ballasts. In the OEC Plan, LUMINAIRE represented that all PCB-ballasts received into its facility would be recorded on the company's ballast tracking logs, and that PCB capacitors and any PCB-contaminated "potting material" would be removed from the ballasts and transported off-site to be incinerated by a company in Texas.  Defendant JOHN MILLER was listed in the OEC Plan as the primary emergency coordinator.

3

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

## Stautory and Regulatory Background

7.     The Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 *et seq.*,
authorizes the United States Environmental Protection Agency ("EPA") to regulate the
manufacture, distribution in commerce, use, and disposal of various toxic chemicals.
Among the chemicals regulated by the EPA under TSCA are polychlorinated biphenyls,
which are often referred to as "PCBs." Pursuant to TSCA, EPA promulgated regulations
prescribing methods and procedures for the transportation and disposal of PCBs, and
requiring PCBs to be marked with clear and adequate warnings. 15 U.S.C. § 2605(e)(1);
40 C.F.R. §§ 761 *et seq.*   In general, the PCB regulations apply to any substance, mixture,
or item that contains PCBs at a concentration of 50 parts per million (ppm) or greater.

8.     Among the products or items that often contain PCBs in amounts 50 ppm or
greater are fluorescent lighting fixtures and ballasts.   A ballast is a device that electrically
controls fluorescent light fixtures.   The capacitors within fluorescent light ballasts may
contain PCB oil, and these capacitors typically are surrounded by an insulation material
commonly known as "potting material," which itself may contain PCBs.   Although
capacitors manufactured after 1979 no longer contain PCBs, many PCB-containing
capacitors manufactured prior to 1979 remain in use, particularly in older buildings.
During the course of demolition or construction projects, individuals and entities often seek
to dispose of PCB-containing fluorescent light fixtures and ballasts, and must find a waste
disposal business through whom they can lawfully dispose of these fixtures and ballasts.

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

9.    According to the TSCA regulations, fluorescent light ballasts containing 50 ppm or more of PCBs must be disposed of as "PCB bulk product waste," generally in an incinerator, a chemical landfill, or a state-approved hazardous waste landfill.

10.    When transported for off-site disposal, PCB-containing ballasts must be accompanied by shipping documentation—generally a manifest—identifying the PCB waste. The generator of the PCB waste is required to list on the manifest the off-site storage or disposal facility to which the waste is being shipped.   After the designated storage or disposal facility receives a shipment of PCB waste, the owner or operator of such facility must sign and date each copy of the manifest to certify that the PCB waste covered by the manifest was received.   Copies of the signed manifest must then be given to the generator and the transporter of the PCB waste, and must be retained by the waste disposal facility for at least three years.

11.    Owners and operators of PCB disposal facilities must prepare a "Certificate of Disposal" for each shipment of manifested PCB waste that was accepted and disposed of at the facility, and must send the Certificate of Disposal to the generator of the PCB waste within thirty days of the date of disposal.

12.    Under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et. seq.*, generators of PCB wastes which ultimately are disposed of improperly could face liability for the costs of clean-up actions made necessary by such improper disposal of the PCB wastes.

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

## COUNT 1
(Conspiracy to Commit Mail Fraud and Wire Fraud)
18 U.S.C. § 1349

13.     Beginning in or about 2010, and continuing until in or about 2015, in the

State and District of Minnesota and elsewhere, the defendants,

## LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC.,
## JOHN D. MILLER, JR., and
## JOSEPH V. MILLER,

did knowingly conspire with each other and with others to devise and participate in a

scheme and artifice to defraud and to obtain money and property by means of materially

false and fraudulent pretenses, representations, promises, and material omissions, and for

the purpose of executing such scheme and artifice, and attempting to do so: (a) caused the

sending, delivering and receipt of various matters and things by United States Postal

Service and private and commercial interstate carrier; and (b) caused the transmission in

interstate commerce, by means of wire communications, of certain writings, signs, signals,

pictures and sounds.

14.     It was part of the scheme that between in or about 2010 and in or about 2015,

in order to generate business for LUMINAIRE, defendant JOHN MILLER made false

representations and caused false representations to be made to current and prospective

business customers that LUMINAIRE would pick up shipments of PCB-containing ballasts

from its customers and transport or arrange to transport these toxic chemicals to the

LUMINAIRE facility in Plymouth, Minnesota, where the PCBs would be removed from

6

the ballasts and sent off-site to be incinerated or otherwise properly disposed of in accordance with applicable laws and regulations.  It was important to customers that the PCB-ballasts be properly recycled because, among other reasons, environmental laws required the customers to ensure proper disposal of toxic chemicals and maintain accurate records, and customers could potentially face liability in the event that the toxic chemicals were improperly disposed of and caused negative environmental effects.  The defendants charged customers a significant fee for transporting and properly disposing of PCB-ballasts, which the customers paid in reliance upon the defendants' false and fraudulent representations that the PCB-ballasts would be transported to LUMINAIRE's facility in Plymouth, Minnesota, and that all of the PCBs would be removed from the ballasts and incinerated or otherwise properly recycled in accordance with the law.

15.    Despite assuring customers that their toxic chemicals were being properly disposed of and charging customers for that service, after picking up loads of PCB-containing materials from the customer, defendants caused many of these loads to be diverted to scrap yards and metal recycling facilities, where they sold the PCB-containing materials as scrap metal.  Specifically, after receiving an order from a customer, defendants directed and caused employees of LUMINAIRE to travel to customers' places of business and pick up drums or Gaylord boxes of PCB-containing ballasts.  Many of these containers had been marked by the customers with labels and/or markings identifying the contents as "PCBs," "Polychlorinated Biphenyls," or "Hazardous Waste."  Defendants

7

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

directed and caused the LUMINAIRE employees to scrape the labels and markings off the containers and, at times, to use spray paint in order to further disguise the true contents of the containers. Defendants also directed and caused the LUMINAIRE employees to transport the PCB-containing ballasts to scrap yards and metal recycling facilities, often in close proximity to the customer site, where the PCB-ballasts were falsely identified as non-PCB materials and fraudulently sold to the scrap yards and metal recycling facilities as scrap metal.

16.     Many of the loads of ballasts that LUMINAIRE picked up from customers were accompanied by manifests or other shipping documentation that identified the contents of the loads as PCB-containing materials, and designated the LUMINAIRE facility in Plymouth, Minnesota, as the facility to receive and dispose of the PCB-containing materials. In order to conceal the fact that the toxic chemicals were not received at LUMINAIRE's Plymouth facility, but instead were disguised and then diverted and sold at scrap yards, defendants JOHN MILLER and JOE MILLER falsely and fraudulently certified and caused others to certify on the manifests that the PCB-materials identified in the manifests had been received at LUMINAIRE's Plymouth facility. Defendants JOHN MILLER and JOE MILLER also at times caused LUMINAIRE's books and records to be falsified in order to conceal the true destination and disposal of customers' toxic chemicals.

8

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

17.    In order to confirm to customers that their PCB-containing waste had been appropriately disposed of as required by law, defendants JOHN MILLER and JOE MILLER and other LUMINAIRE employees caused copies of the falsified manifests to be delivered by mail to the customers from whom the loads of PCB-ballasts had been received. Defendants also caused copies of the falsified manifests to be sent by mail to state environmental regulatory agencies, thereby falsely representing to the state agencies that the toxic chemicals had been properly transported to LUMINAIRE's facility in Minnesota.

18.    In order to solicit payment of the fees charged by LUMINAIRE for transporting and properly disposing of the toxic chemicals—work that they never performed—and to confirm to customers that their PCB-containing waste had been appropriately recycled as required by law, defendants JOHN MILLER and JOE MILLER and other LUMINAIRE employees caused invoices to be prepared and delivered to customers containing a "Certificate of Recycling/Disposal" that read as follows:

> Luminaire ETC certifies that all waste materials accepted are recycled or if not recycled disposed of in accordance with all applicable Federal, State and Local Regulations and within all regulated time periods.

In fact, and as the defendants knew, the PCB-containing waste materials had not been recycled or disposed of in accordance with the state and federal regulations, but instead had been disguised and sold as scrap metal.

19.    It was further part of the scheme that defendant JOHN MILLER and other LUMINAIRE employees devised and implemented a practice whereby a small percentage

9

of the PCB-containing ballasts were transported to and processed at the LUMINAIRE facility in Plymouth, Minnesota, in order to maintain the appearance to government regulators that the PCB-ballasts that LUMINAIRE contracted to recycle were being properly transported and disposed.   However, the vast majority of PCB-ballasts picked up by LUMINAIRE employees were falsely and fraudulently identified as non-PCB material and sold to scrap yards and metal recycling facilities with the PCBs still inside the ballasts as described above.

20.     It was further part of the scheme that when applying for annual renewals of LUMINAIRE's facility license from Hennepin County, Minnesota, during 2010 to 2015, defendant JOHN MILLER and others falsely and fraudulently represented in those license renewal applications that "[n]o changes to … facility operations have taken place," when in fact, and as the defendants well knew, the PCBs in the vast majority of PCB-ballasts taken in by LUMINAIRE during each of those years were not being removed and sent off-site for incineration as had been represented in LUMINAIRE's original license application and accompanying documents.

21.     Relying on the representations made by JOHN MILLER and other LUMINAIRE employees regarding the proper disposal of the PCB-containing waste, customers made payments to LUMINAIRE through various means, including by check and electronic payment methods.   In total, as a result of the false and fraudulent representations, pretenses, and material omissions set forth above, LUMINAIRE collected

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

more than $1,000,000 in fees from its customers and additional profits from the scrap yards to which LUMINAIRE diverted the customers' toxic chemicals.

All in violation of Title 18, United States Code, Sections 1349.

## COUNTS 2-6
(Mail Fraud)
18 U.S.C. § 1341

22.    The allegations contained in paragraphs 1 through 21 of this Indictment are re-alleged as if stated in full herein.

23.    On or about the following dates, in the State and District of Minnesota and elsewhere, the defendants,

### LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC.,
### JOHN D. MILLER, JR., and
### JOSEPH V. MILLER,

having devised and intending to devise the scheme and artifice described above, caused to be sent, delivered, and moved by the United States Postal Service and private and commercial interstate carrier various mailings, items and things for the purpose of executing and attempting to execute such scheme and artifice:

| COUNT | DATE (on or about) | MAILING DETAILS |
| --- | --- | --- |
| 2 | August 27, 2014 | 3 Pallets of PCB-containing ballasts sent via FedEx from Environmental Resource Technologies in Colorado to LUMINAIRE in Minnesota |

11

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

| 3 | January 19, 2015 | Hazardous Waste Manifest 007887882 FLE sent via United States Postal Service from LUMINAIRE in Minnesota to Complete Recycling Solutions in Massachusetts |
| 4 | January 19, 2015 | Hazardous Waste Manifest 007887882 FLE sent via United States Postal Service from LUMINAIRE in Minnesota to the Massachusetts Department of Environmental Protection |
| 5 | February 16, 2015 | Hazardous Waste Manifest 007887935 FLE sent via United States Postal Service from LUMINAIRE in Minnesota to Complete Recycling Solutions in Massachusetts |
| 6 | February 16, 2015 | Hazardous Waste Manifest 007887935 FLE sent via United States Postal Service from LUMINAIRE in Minnesota to the Massachusetts Department of Environmental Protection |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 7-16
(Wire Fraud)
18 U.S.C. § 1343

24.     The allegations contained in paragraphs 1 through 21 of this Indictment are re-alleged as if stated in full herein.

25.     On or about the following dates, in the State and District of Minnesota and elsewhere, the defendants,

### LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC.,
### JOHN D. MILLER, JR., and
### JOSEPH V. MILLER,

having devised and intending to devise the scheme and artifice described above, caused to be transmitted by means of wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds for the purpose of executing and attempting

12

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

to execute such scheme and artifice:

| COUNT | DATE<br>(on or about) | WIRE DETAILS |
|---|---|---|
| 7 | February 20, 2013 | Processing and settlement of Check No. 8399 in the amount of $3,333.25 from AERC to LUMINAIRE |
| 8 | August 5, 2013 | Processing and settlement of Check No. 10365 in the amount of $3,150.90 from AERC to LUMINAIRE |
| 9 | February 26, 2014 | Email sent from JOHN MILLER to Stephen Lefon (AERC) attaching Certificates of Recycling Ballasts |
| 10 | April 14, 2014 | Email sent from JOHN MILLER to Keith Boyea (Complete Recycling Solutions) re: Ballast Proposal |
| 11 | June 23, 2014 | Processing and settlement of Check No. 14357 in the amount of $3,150.00 from AERC Recycling Solutions to LUMINAIRE |
| 12 | July 14, 2014 | Email sent from JOHN MILLER to Keith Boyea (Complete Recycling Solutions) re: PCB Process |
| 13 | July 18, 2014 | Email sent from JOE MILLER to Michael Helm (Environmental Resource Technologies) attaching letter from JOHN MILLER explaining LUMINAIRE's PCB-ballast disposal procedures |
| 14 | November 7, 2014 | Processing and settlement of Check No. 7059 in the amount of $1,197.80 from Complete Recycling Solutions to LUMINAIRE |
| 15 | January 6, 2015 | Processing and settlement of Check No. 16777 in the amount of $6,384.05 from AERC Recycling Solutions to LUMINAIRE |
| 16 | March 25, 2015 | Processing and settlement of Check No. 7406 in the amount of $1,877.50 from Complete Recycling Solutions to LUMINAIRE |

All in violation of Title 18, United States Code, Sections 1343 and 2.

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

## COUNTS 17-22
(Falsification of Document with Intent to Obstruct)
18 U.S.C. § 1519

26.    The allegations contained in paragraphs 1 through 21 of this Indictment are re-alleged as if stated in full herein.

27.    On or about the following dates, in the State and District of Minnesota and elsewhere, the defendants,

**LUMINAIRE ENVIRONMENTAL AND TECHNOLOGIES, INC.,
JOHN D. MILLER, JR., AND
JOSEPH V. MILLER,**

knowingly made and caused to be made false entries in a record and document with the intent to impede, obstruct, and influence the investigation and proper administration of any matter within the jurisdiction of any department of the United States, and in relation to and in contemplation of such matter, in that defendants JOHN MILLER and JOE MILLER, as well as other LUMINAIRE employees, acting within the scope of their agency and employment, and for the benefit of LUMINAIRE, signed or caused other LUMINAIRE employees to sign and thereby falsely certified on a Hazardous Waste Manifest that the PCB-materials described in the manifest had been received at the LUMINAIRE facility in Plymouth, Minnesota, when in truth and in fact, and as the defendants well knew, the shipment of PCB-containing materials identified in the manifest had been diverted and sold to one or more metal recycling facilities:

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

| COUNT | DATE<br>(on or about) | FALSE ENTRY |
|---|---|---|
| 17 | October 6, 2014 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 008363862 JJK |
| 18 | October 6, 2014 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 007887688 FLE |
| 19 | January 19, 2015 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 007887881 FLE |
| 20 | January 19, 2015 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 007887882 FLE |
| 21 | February 16, 2015 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 007887934 FLE |
| 22 | February 16, 2015 | Certification of receipt of PCB-containing materials on Hazardous Waste Manifest 007887935 FLE |

All in violation of Title 18, United States Code, Sections 1519 and 2.

## FORFEITURE ALLEGATIONS

28.    Counts 1-16 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

29.    As the result of the offenses alleged in Counts 1-16 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c),

15

U.S. v. Luminaire Environmental and Technologies, Inc., et al.

any property, real or personal, which constitutes or is derived from proceeds traceable to the violations alleged in Counts 1-16 of this Indictment.

30.    If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____         _____
ACTING UNITED STATES ATTORNEY                    FOREPERSON

16